**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 17 2013, 9:35 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JUSTIN R. WALL**
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ADAM S. FIERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 85A04-1306-CR-320 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-0806-FC-64

**December 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

Adam Fiers appeals the trial court's order revoking his probation, asking whether the trial court erred by revoking Fiers's probation for failure to pay probation fees, court costs, and restitution. Concluding Fiers violated his probation and that the sanction imposed by the trial court was not an abuse of discretion, we affirm.

Facts and Procedural History

In June 2008, the State charged Fiers with four counts of burglary, Class C felonies, attempted burglary, a Class C felony, and theft, a Class D felony. Fiers pled guilty to all but one count of burglary and received an aggregate sentence of six years imprisonment with two years suspended to probation. As a condition of his probation, Fiers was ordered to pay probation fees, court costs, and restitution. The term of his probation was to be from June 6, 2010 to June 5, 2012.

On June 15, 2012, the State filed a petition to revoke Fiers's probation, alleging he violated the terms of his probation by failing to pay restitution, costs, and fees.[1] Specifically, Fiers's unpaid fees included "$440.00 in Probation User fees, $854.00 in Court Costs, and $10,617.74 in Restitution." Appellant's Appendix at 42.

On October 1, 2012, a hearing was held for the purpose of determining facts related to Fiers's alleged violation and ability to pay the outstanding fees, costs, and restitution. The parties stipulated to the unpaid amounts alleged in the petition to revoke probation, and Fiers admitted he had only paid $370 during his two years on probation.

---

[1] A petition to revoke probation is timely filed if done within one year after the termination of probation. Ind. Code § 35-38-2-3(a)(2).

Fiers obtained his GED while incarcerated but has no secondary degree or vocational training. He is married and has three step-children; however, all three children live with their fathers, and Fiers has no legal obligation to support them. From the time of his release until the hearing, Fiers had only one paying job. He worked forty hours per week at Hardee's, earning approximately $300 per week. Fiers testified he used this money to pay rent, and he would use extra money at the end of the month to pay into his probation fees, usually only twenty or thirty dollars at a time. Unfortunately, he was employed at Hardee's for only six months before being fired after oversleeping and missing work on two separate occasions. Fiers submitted a list of local businesses to which he claimed to have submitted applications since his termination from Hardee's, but none of them had resulted in a job offer. He testified that he had no physical, mental, or emotional disability that would prevent him from holding down a job.

Fiers's primary expense was his rent of $500 per month. He shared an apartment with his wife, but at the time, she was also unemployed. Fiers used food stamps to pay for all their groceries, had no vehicle, and said he did not spend money on unnecessary entertainment. Fiers smoked cigarettes but did so only occasionally. He also claimed to have medical bills that were "probably" over $10,000, which were associated with treatment he received for bronchitis. Transcript at 20. The only other income Fiers admitted to having during his two years of probation was approximately $1000 in tax refunds. He used the majority of that money to pay off a debt owed by his ex-wife to a bank, and none went toward paying the debts associated with his probation.

At the conclusion of the October 1 hearing, the trial court found Fiers to be in violation of probation. The court noted, "I don't think he could have paid a whole lot. I

3

think he could have paid more than he did." Tr. at 27-28. However, the trial court opted to put off the matter for another six months, giving Fiers an opportunity to obtain a job and develop a plan to make payments on the debt.

A status hearing was held on April 15, 2013, approximately six months after the previous hearing. Fiers presented the court with three receipts indicating payments made to the court. However, two were made for separate superior court cases, and only one of the three—a $50 payment—was relevant to the case at hand. This was the only payment made during the six months between hearings. Fiers testified that he had been searching for a job for most of that time and secured employment at Hi-Grade Egg just a couple weeks before the hearing. In that position, he worked seventy-two hours every two weeks, earning $8.50 per hour. Fiers stated he intended to make a $50 payment every week. Once again, the trial court continued the case in order to give Fiers a chance to make regular payments.

A dispositional hearing was held on June 17, 2013. During the two months since the last hearing, Fiers had made two $50 payments and one $100 payment. He was still working at Hi-Grade Egg and claimed to make approximately $700 every two weeks. Fiers's rent was $450 per month (utilities included). And he recently purchased a vehicle and made monthly payments of $135 against it. He also testified his wife had recently obtained a job at a gas station. At the close of the dispositional hearing, the trial court determined Fiers's probation should be revoked and ordered him to serve six months on work release. This appeal followed.

4

## Discussion and Decision

### I. Standard of Review

"Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." Heaton v. State, 984 N.E.2d 614, 616 (Ind. 2013) (citation omitted). It is within the trial court's discretion to determine probation conditions and to revoke probation upon violation of a condition. Id. Thus, an appeal from a trial court's finding of a violation and the resulting sanction are reviewed only for an abuse of discretion. Id. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances or if it is contrary to law. Id.

### II. Violation and Revocation of Probation

The trial court's discretion to revoke probation is triggered by a violation of a condition of probation. Ind. Code § 35-38-2-3(a). It is the State's obligation to prove such a violation by a preponderance of the evidence. Ind. Code § 35-38-2-3(f). Additionally, Indiana's revocation statute provides that "[p]robation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." Ind. Code § 35-38-2-3(g). The State bears the burden to prove a violation made with the requisite state of mind. Runyon v. State, 939 N.E.2d 613, 616 (Ind. 2010).

In Runyon, our supreme court announced that a probationer's "ability to pay" must also be considered before imposing imprisonment as a sanction for failure to comply with financial conditions. Id. The court held that a probationer must have the opportunity to "show facts related to an inability to pay and indicating sufficient bona

5

fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered." Id. at 617.

Fiers argues on appeal that he did not recklessly, knowingly, or intentionally fail to pay under the conditions of his probation. He also contends that he made a bona fide effort to honor his financial obligations (i.e. he did not have to ability to pay), and thus, the sanction imposed by the trial court is unlawful. We address each of Fiers's arguments below.[2]

## A. Violation and State of Mind

Following our supreme court's decision in Smith v. State, 963 N.E.2d 1110, 1113-14 (Ind. 2012), it is apparent that the bar for establishing a probationer knowingly failed to pay a financial obligation of his probation is very low. The court in Smith noted that "a person engages in conduct 'knowingly' if, when he or she engages in the conduct, the person is aware of a 'high probability' that he or she is doing so." Id. at 1113 (citing Ind. Code § 35-41-2-2(b)). The court found that the probationer in Smith violated his probation if he was aware of a high probability that he was not making his weekly child support payments in the full amount. Id. This knowledge "may be proved by circumstantial evidence and inferred from the circumstances and facts of each case." Id.

Here, the trial court could have easily concluded that Fiers was aware he was not up-to-date in his payments. At the hearing on October 1, 2012, Fiers admitted to only having paid $370 up to that point, with outstanding court costs in the amount of $854, $440 in probation user fees, and over $10,000 in restitution. During the two years he had

---

[2] In our view, the heart of Fiers's argument on appeal is that he did not have the ability to pay. However, he frames his argument by claiming both a lack of the requisite mental state and an inability to pay, conflating the two issues in the process. Because these are actually two separate inquiries, we will address them separately in this opinion.

been on probation, he had a job for only six months, after which he was fired for being tardy on two occasions. Fiers claimed that during that six month period of employment, he paid rent and used what was left—twenty or thirty dollars at a time, in his words—to make payments toward his probation costs. This evidence is sufficient for the trial court to determine that Fiers was not up-to-date in his payments and that he was aware of that fact. Therefore, the trial court did not err by finding Fiers knowingly violated conditions of his probation.

## B. Ability to Pay

Fiers also maintains that he did not have an ability to pay his obligations. This is, no doubt, a much closer question. Although it is undeniable that Fiers did not have the ability to pay the entire sum owed during his two-year period of probation, the trial court concluded Fiers could have paid more than he did. We believe this determination and the corresponding decision to place Fiers on work release to be within the trial court's discretion.

Over the course of a two year period, Fiers paid a total of only $370 until the State filed its petition to revoke probation. During that span, he was employed six months with Hardee's before being fired. By the time of the status hearing, which was held six months after the fact-finding hearing, Fiers had a job with Hi-Grade Egg that he secured only two weeks earlier. He had made only a single payment of $50 but expressed an intent to continue making payments at a rate of at least $50 per week. The trial court gave Fiers one last opportunity to show a real dedication to make his payments and scheduled a dispositional hearing for two months later. At that final hearing, he had made just three payments totaling $200; that amount was less than half that expected if

7

Fiers had followed through with his promise to pay $50 per week. Moreover, he had taken on a monthly car-payment of $135 since his last hearing.

Fiers points to his expenses, limited education, and unsuccessful attempts to find a job as proof that he did not possess an ability to pay. We sympathize with Fiers's position, as it is assuredly challenging to obtain a job while saddled with a felony conviction. That said, much of the time he spent unemployed is largely attributable to his own fault, including his termination from Hardee's after six months of employment. Further, Fiers submitted no evidence that his purchase of a vehicle was a necessary expense, and those payments were comprised of monies that could have otherwise gone toward paying probation costs at a time when the court was attempting to provide Fiers a bit of leniency.

We recognize Fiers's ability to pay the entire sum owed in a period of only two years was virtually impossible given his limited earning capacity. Nonetheless, we believe the trial court was within its discretion in determining that Fiers did not meet his burden of proving "sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered." Runyon, 939 N.E.2d at 617. The trial court found Fiers had the ability to pay more than he did, and from where we sit, that determination is not an abuse of discretion.

## Conclusion

We conclude Fiers knowingly failed to meet conditions of his probation involving financial obligations and that the trial court did not abuse its discretion by finding Fiers had the ability to pay more than he paid during the term of his probation. Therefore, we

8

affirm the decision of the trial court revoking Fiers's probation and sentencing him to serve six months on work release.

Affirmed.

BARNES, J., and BROWN, J., concur.